JOHN W. COLEMAN *v.* URIAH D. EDWARDS AND FRANKLIN L. JACKSON.

1. Where a motion for a new trial, on the ground of alleged *misdirection of the court in its charge to the jury,* is continued to a term of the court subsequent to the trial term, and then overruled, the party making the motion has the right to his bill of exceptions to the order of the court overruling the motion, although no exceptions were taken to the charge of the court to the jury at the time of the trial, and signed and sealed at the trial term; this right of the party being secured by the positive provision of the statute giving the right of exception, in all cases of motion for new trial, on the ground of any supposed error of the court in its instructions to the jury. The case of *Hicks* v. *Person,* 19 Ohio Rep. 426, in this respect, explained and qualified.
2. In case of a contract for the delivery of specific articles within a specified time, where the party has made a tender, which, through inadvertence or mistake, turns out to be insufficient and ineffectual, he has the right to make a subsequent tender of articles, such as are required by the contract, within the time specified, unless there be some provision in the terms of the contract preventing it.
3. In case of a contract for the delivery of five hundred hogs to a person in the city of Cincinnati, within a specified time, the hogs to be well corn-fatted, and of the average weight of one hundred and ninety pounds net, to be delivered to the party and slaughtered within a reasonable time, weather permitting, the party receiving the hogs *having the sole benefit and control* of slaughtering them; where, after five hundred hogs, which had been delivered, and on being slaughtered and weighed, and ascertained to fall three pounds short of the average contract weight, had on this ground been rejected as not being in conformity to the contract, the provision of the contract, that the party receiving the hogs shall have the *sole benefit and control* of the slaughtering of them, imposes no burden or condition upon him (the slaughtering being paid for by the offals, and the control of the slaughtering being a benefit), which deprives the other party from the right to make a subsequent tender of five hundred hogs, in full compliance with the contract, within the time specified.

PETITION in error to reverse the judgment of the District Court of Hamilton county.

The original action was brought by the defendants in error against the plaintiff in error, in the court of common pleas, on the 9th of December, 1847, for the recovery of damages for an alleged breach of covenant. At the November term, 1849, the cause was tried, and a verdict rendered for the defendant below;

whereupon the plaintiffs below moved for a new trial, on the alleged ground of misdirection of the court to the jury. This motion was continued to the February term, 1850, when it was, after hearing, overruled, and judgment given on the verdict. The plaintiffs· below then tendered the bill of exceptions which was signed and sealed by the court, and afterwards sued out a writ of error from the late Supreme Court of Hamilton county, which was subsequently transferred to the district court, where the judgment of the common pleas was reversed, with costs. And to review that decision, this proceeding in error is prosecuted.

The writing obligatory, upon which the original action was founded, is in these words:

" A memorandum of an agreement, entered into the third day of June, 1847, between John W. Coleman, agent for George W. Woodward, of the city of Cincinnati, county of Hamilton, and State of Ohio, and Uriah Edwards and Franklin L. Jackson, both of Rush county, Indiana, witnesseth : That the said Uriah Edwards and Franklin L. Jackson, do hereby agree and bind themselves to deliver unto the said John W. Coleman, agent of George W. Woodward, five hundred hogs, to average one hundred and ninety pounds net; said hogs to be delivered at Cincinnati, between the twentieth day of November and tenth of December, 1847; said hogs to be delivered to said Coleman, agent of said Woodward, and to be slaughtered within a reasonable time, weather permitting; said hogs to be well corn-fatted, and said Coleman, agent of said Woodward, to have the sole benefit and control of slaughtering said hogs. And the said John W. Coleman, agent of George W. Woodward, in consideration of the premises aforesaid, doth hereby agree and bind himself, as said agent for said Woodward, to pay unto the said Uriah Edwards and Franklin L. Jackson, the sum of four dollars and twenty-five cents per hundred pounds net for said hogs, when delivered at Cincinnati as aforesaid. And it is further agreed by said Coleman, agent for said Woodward, that if the said Uriah Edwards and Franklin L. Jackson shall require it, the said Coleman, agent of said Woodward, will, upon demand for the same, advance and pay upon said contract, unto said Edwards and Jackson, one

thousand dollars, on or after the first day of September, 1847, upon said Edwards and Jackson giving satisfactory indorsers upon their notes for the same, if required by said Coleman, agent for said Woodward. In witness whereof, the said parties have hereunto severally set their hands and seals, this third day of June, 1847."

This article was signed and sealed by Uriah D. Edwards and Franklin L. Jackson, and signed by Coleman, " agent for G. W. Woodward," but sealed with his own seal.

The bill of exceptions states that, upon the trial, at November term, 1849, the plaintiffs, after presenting the article of agreement, under seal, " offered evidence tending to prove that the said plaintiffs, between the twentieth day of November, 1847, and the tenth of December, 1847, delivered to the said John W. Coleman five hundred hogs; and there was evidence before the jury tending to prove, that said five hundred hogs were of the description mentioned in the contract, with the exception, that the average net weight of said hogs was one hundred and eighty-seven pounds only; but the defendant offered evidence tending to prove that the hogs were not an even lot, and not well corn-fatted. The plaintiffs also offered evidence tending to prove, that the market price for hogs, between the said 20th of November and 10th of December, 1847, was three dollars per hundred weight net; and there was also evidence tending to prove, that there was no difference, at the time last aforesaid, in the market price of hogs, of the average weight of one hundred and eighty-seven pounds net, and of hogs of the average weight of one hundred and ninety pounds net, but that corn-fatted were more valuable than others. And the plaintiffs, by their counsel, asked the court to charge the jury, that if the evidence convinced the jury that said hogs were of the description aforesaid, and were delivered as aforesaid, that the plaintiffs were entitled to recover. But the court refused so to charge, and charged the jury, that the plaintiffs could not recover unless said five hundred hogs were of the average net weight and quality agreed upon in the contract.

" The plaintiffs also offered, and gave to the jury, evidence

tending to prove, that the said John W. Coleman, by his agent, acting under his direction, received said hogs, caused the same to be slaughtered, and removed from the New York slaughter-house to the pork-house of Taylor, Fuller & Co., where said hogs were weighed; and that immediately after the weight of said hogs had been ascertained, and reported to the said Coleman, he, the said John W. Coleman, refused to have any thing to do with said hogs. And thereupon the plaintiffs, by their counsel, asked the court to charge the jury, that if the hogs were received by the said John W. Coleman as aforesaid, and slaughtered as aforesaid, that then said John W. Coleman had waived all objection to said hogs, and that the plaintiffs were entitled to recover the difference between the contract and the market price. But the court refused so to charge, but charged the jury, that the said John W. Coleman was not obliged to make any objection to said hogs until after the same had been slaughtered and weighed, and the weight and quality of said hogs ascertained.

" And the plaintiffs also offered evidence tending to prove, that they, the said plaintiffs, afterwards, on the eighth day of December, in the year 1847, tendered to said John W. Coleman five hundred hogs, of the average weight of one hundred and ninety pounds net and more, and otherwise filled the contract; and there was also evidence tending to prove, that the hogs last tendered were not in the possession of the plaintiffs; which hogs the said John W. Coleman refused to receive. And thereupon the plaintiffs, by their counsel, asked the court to charge the jury, that if they believed the plaintiffs, on the 8th of December, 1847, at Cincinnati, tendered to the said John W. Coleman five hundred well corn-fatted hogs, that then the plaintiffs were entitled to recover the difference between the contract and the market price. But the court refused so to charge, and charged the jury, that the plaintiffs, having delivered five hundred hogs, as a compliance with their covenants, that they could not make a second tender; but if a second tender could be made, the party must show a present ability to perform the contract on his part.

" And the jury returned a verdict for the defendant, and thereupon the plaintiffs moved for a new trial, for the reason that said

court misdirected the jury; which motion said court held under advisement until the present term of this court; and now, at this February term, 1850, of the court aforesaid, the said court overruled said motion for a new trial, and caused judgment to be entered on said verdict. To all of which several opinions of the court aforesaid, the plaintiffs, by their counsel, objected and except, and pray that this their bill of exceptions may be signed and sealed by the court, and made a part of the record, which is done."

The error assigned in the district court was, that the common pleas erred in overruling the motion for a new trial, founded on the alleged misdirection of the court to the jury.

*Pugh & Pendleton*, for plaintiff in error.

*J. T. Crapsey*, for defendants in error.

BARTLEY, J.   The first question made by the plaintiff in error is as to the sufficiency of the bill of exceptions. The cause was tried in the common pleas before a jury, at the November term, 1849, and, after verdict for the defendant, the plaintiffs moved for a new trial, for the reason of misdirection of the court to the jury; which motion the court held under advisement until the next term, when the motion was overruled, and judgment entered on the verdict. And the bill of exceptions was tendered and signed and sealed by the court, on the overruling of the motion for a new trial. The statute of March 12, 1845, relating to the allowance of bills of exceptions, under which this proceeding was had, authorized the party to take his bill of exceptions, and made it the duty of the judges to sign and seal it during the term at which the opinion was given, order made, or judgment rendered, to which the exception was alleged. Now, the bill of exceptions, in this case, was taken to the order overruling the motion for a new trial grounded on a supposed misdirection of the court to the jury. If the bill of exceptions had relation simply to *the instructions of the court to the jury*, which were given at the November term, 1849, it would have been bad, because not

signed and sealed at that term. But an exception to instructions to the jury, in the charge of the court, is one thing, and an exception to an order overruling a motion for a new trial, for the reason of misdirection of the court to the jury, in the charge, is another and different thing. And these proceedings, clearly distinguishable, must not be confounded. If there were error in the instructions given to the jury, it was the duty of the court to grant a new trial, even at the next term, to which the motion had been continued. The power of the court to continue the motion for a new trial, under advisement, until the next term, is unquestionable, and yet, according to the construction of the statute claimed by the plaintiff in error, the exercise of this power would enable the court to deprive the party of the right to a bill of exceptions to the order overruling the motion for a new trial —a right secured by the positive provisions of the statute.

It is insisted that this question has been differently decided in the case of *Hicks* v. *Person*, 19 O. R. 435. But, duly considered, that case cannot be so taken. It is true, in the reasoning of the judge delivering the opinion, such a construction of the statute is strongly intimated, but the opinion on this point concludes as follows : " Under these circumstances, we are of opinion that we cannot *with propriety* interfere with the judgment of the court of common pleas for *any error supposed to have been committed by that court, in its action in the November term,* 1847," which was the term of the trial, the motion for new trial having been continued, and overruled at the March term, 1848, when the bill of exceptions was signed and sealed. Now, this conclusion is not at all inconsistent with the views taken in the case now before us. No bill of exceptions having been taken to the instructions given in the charge to the jury, at the November term, 1847, the court could not reverse the judgment of the common pleas for error committed at that term, on a bill of exceptions taken at a subsequent term. But the court does not say, in the conclusion, that they could not interfere, upon the ground of error committed in the order overruling the motion for a new trial, at the March term, 1848. On the contrary, the court did proceed (for reasons assigned not very satisfactory)

to consider and decide the case on the assignments of error predicated on the bill of exceptions. If the opinion in this case had to be considered, as confounding an exception to instructions to the jury given on the trial, with an exception to an order overruling a motion for a new trial, grounded on a misdirection of the court to the jury, it would have to be overruled.

We find no difficulty in disposing of this case on its merits. The contract sued on was for the delivery of specific articles, within a specified time ; and where the party bound to make the delivery has made a tender, which, through inadvertence or mistake, turns out to be insufficient and ineffectual, he has the right to make a subsequent tender of articles such as are required by the contract, within the time specified, unless there be some provision in the terms of the contract preventing it.

Edwards and Jackson bound themselves to deliver to Coleman, in the city of Cincinnati, between the 20th of November and the 10th of December, 1847, five hundred hogs well fatted, and of the average weight of one hundred and ninety pounds net, Coleman to have *the sole benefit and control* of the slaughtering of them, which was to be done within a reasonable time, weather permitting. It appears, that after Edwards & Jackson had delivered five hundred hogs, which, on being slaughtered and weighed, and ascertained to fall three pounds short of the average contract weight, had been rejected by Coleman as not being in strict conformity to the contract, they made a subsequent tender of five hundred hogs, claimed to be in full compliance with the contract, and within the time specified for the delivery. As to the evidence tending to prove this, however, and the instructions to the jury on the subject, asked by the defendants in error, the court charged the jury, that Edwards and Jackson having delivered five hundred hogs as a compliance with their covenants, if this delivery failed for insufficiency, and the hogs were rejected, a second tender of performance could not be made. In this the court erred. The provision of the contract, that the party receiving the hogs should have the *sole benefit and control* of the slaughtering of them, imposed no burden or condition upon him, (the slaughtering being paid for by the offals, and the con-

trol of the slaughtering being a benefit,) which deprives the other party of the right to make a subsequent tender of performance in full compliance with the contract, within the time specified.

Had the slaughtering of the hogs imposed a *burden* on Coleman, it might have had a material bearing on the rights of the parties; but it appears that the offals, at Cincinnati, fully compensate for the slaughtering of hogs ; and that Coleman stipulated for the slaughtering as a benefit to himself. And had he been indisposed to slaughter the hogs offered by the second tender, he could of course have had it done without any expense to himself.

*Judgment of the district court affirmed.*

THURMAN, C. J., dissented as to the first and third propositions in the syllabus.

J. R. SWAN, J., dissenting as to the third proposition of the syllabus. In general, an ineffectual tender does not prevent a party from making another and valid tender, within the time prescribed by the contract. But where, as in this case, a second tender devolves a burden upon the party to whom the tender is made, not contemplated by the terms of the contract, and arising out of the default of the party making the first tender, a second valid tender cannot, in my opinion, be made. In the case before us, the plaintiff took upon himself the risk of the net weight of the hogs. Coleman stipulated to slaughter the hogs. If the first ineffectual tender can be made good by a second, then the plaintiff was bound to slaughter one thousand, instead of five hundred hogs. It is clear that this was not contemplated by the contract. It is said that the plaintiff is benefited by slaughtering one thousand hogs, instead of five hundred. Whether he would be benefited or not, is a question within his province to determine, depending upon his own situation, convenience, and discretion. Whatever devolves on a party a duty, is a burden which he is not to be required by a court to perform, unless contemplated by the terms of his contract. He might find it for his benefit to slaughter the five hundred hogs named in the contract, and a

serious inconvenience to slaughter the one thousand required by the court. It is clear he was not bound to receive hogs already slaughtered ; for no such thing is to be found in the contract.