Brinkerhoff, J.
I. It will be most convenient to consider the third assignment of error first. .The only exception, taken in argument, to the sufficiency of the petition is this: “That it is not averred in the petition that Erwin and Lane were accommodation indorsers; nor is it otherwise averred or shown that Callender, Waterson & Seward had any right or power to hypothecate the $2,000 note.”
To this exception, we think, it is well answered:
1. That although an indorsed note in the hands of the maker after due, is presumed in law to have performed its office, and to have been paid off and taken up by the maker, yet'no such presumption arises in the ease of such note before due ; but that, on the contrary, in such case, it is a matter of legal presumption that the note is unsatisfied, and is indorsed and placed in the hands of the maker for his accommodation. Wallace v. The Branch Bank at Mobile, 1 Ala. 565; Mauldin v. The Branch Bank at Mobile, 2 Ala. 502; Stall v. Cattskill Bank, 18 Wend. 478. It is said, however, that these are presumptions of evidence merely, and not presumptions in pleading. Be this as it may, under the system of pleading at common law, we think that, under the code of civil procedure,.and after verdict, or a finding by the court of all the issues in the case in favor of the plaintiff, a petition stating facts which, if proved on the trial, would constitute a good prima facie case for the plaintiff, must be hold good on error.
2. We think, also, this exception to the petition is well answered by the fact, that the answers of Erwin and Lane aver that they were accommodation indorsers; and even ^supposing the petition to be in itself defective, it is helped out and cured by these averments of the answer.
To this it is replied that, by the provisions of the 127th section cf the code, these allegations of the answer are deemed, in law, to be controverted by the plaintiffs; and that, moreover, the court, in this case, expressly find the facts stated in the answer to be unsustained by the evidence. It seems to us, however, that the pre *40 sumption of law, as to the traverse of facts stated in the answer, and the finding of the court or jury upon those facts must, in reason, be held to apply only to such facts stated in the answer as are inconsistent with the averments and claims of the petition
II. The remaining first two assignments of error may be considered together. They amount to this, that the facts of the case, as proved and shown by the testimony embodied in the bill of exceptions, did not warrant the court below in rendering judgment for the plaintiffs.
The question made as to the sufficiency of the petition being disposed of, and the court below having found all the issues of fact in the case in favor of the plaintiffs, we are, by these assignments of error, now asked to review the finding of the facts by the court below, and to determine whether that finding is sustained by the evidence. It has been twice unanimously decided by this court that this can not, under the law"as it then stood, be required at our hands; first, in House v. Elliott, 6 Ohio St. 497, and in Gest v. Kenner, 7 Ohio St. 75. This disposes of the ease. But inasmuch as it has been very strenuously insisted that there was no evidence whatsoever to sustain the finding and judgment of the court below, I propose, for once, to perform a work of supererogation, and have looked into the testimony; and it seems to me that, on the testimony in the case, the court below was clearly right (though as to this my brethren express no opinion). The case, as it appears in the testimony, is substantially this, no more or less :
*On the 29th of October, 1853, Thomas W. Waterson, of the firm of Callender, Waterson & Seward, came to the banking-house of Shaffer & Curtis, and requested them to discount a promissory note, which reads as follows :
“$2,000. - Hamilton, October 27, 1853.
“ Ninety days after date we promise to pay to the order of John W. Erwin, two thousand dollars — value received.
“ Callender, Waterson & Seward.”
Indorsed: “ John W. Erwin,” “ Clark Lane.”
Shaffer & Curtis declined to discount the note, on account of the length of time it had to run. At that time Callender, Waterson & Seward had a note for $1,000, payable to the order of Lewis D Campbell, and indorsed by him, failing due at said bank. It was agreed between Callender, Waterson & Seward, and Shaffer & Cur *41 -tis, that the note for $1,000, upon which Campbell was indorser, .should be renewed for sixty days, by the note of Callender, Water - „son & Seward, and that Shaffer & Curtis should hold said $2,000 note as collateral security for the payment thereof — said Shaffer & ■Curtis taking interest at the rate of twelve per cent, in advance.
The note for $1,000 fell due December 31,1853, and was renewed by a similar note being given for twenty-seven days, at the same •rate of interest.
Said $2,000 note was regularly protested when it fell due, and notice given to the indorsers that they would be looked to for payment. They were also notified, in the same instrument, that it was held by Shaffer & Curtis as collateral security for the payment of the said $1,000 note.
It was understood by Erwin, when he indorsed said note, that it would be discounted at the Eaton Bank; and it was first offered there. Of this understanding and offer at the Eaton Bank Shaffer ■& Curtis had no knowledge. *The note was blank as to date ■when indorsed by both Erwin and Lane.
Callender, Waterson & Seward failed, and made a general assignment of all their effects on the 14th of January, 1854. Erwin and Lane made no inquiry about their note, and did not know where it was, until after the failure and assignment of Callender, Waterson .& Seward. They were accommodation indorsers, merely, and supposed to be such by Shaffer & Curtis when they took the note.
Now, admitting, for the time being, what is by no means clearly established by proof, that Erwin and Lane indorsed this note for •the special purpose of having the same discounted at the Eaton Bank, still, those indorsements being made for the accommodation •of Callender, Waterson & Seward,-and Shaffer & Curtis being ignorant of the special understanding with which the indorsements were made, Callender, Waterson & Seward had a right to hypothecate it, before due, to them, and they had a right to receive it, as a •collateral security, for a loan then made, or to pay or secure an .■antecedent debt, or to sustain the credit of the makers in any other
way. Grandin v. Le Roy and Smyth, 2 Paige, 509; Bank of Rutland v. Buck, 5 Wend. 66. And Shaffer & Curtis being ignorant of the special understanding, if any, with which the note was indorsed, the fact that the note had been offered for discount to themselves or •others, before hypothecation to them, could make no difference to •them; for, for all purposes of business with bona fide holders for *42 value, without notice of the special understanding with which it was indorsed, the note was as perfectly at the command of the-makers, as if it had been made by Erwin and Lane to them. As to-Shaffer & Curtis, without notice of the special understanding, the case is as if that special understanding had no existence, and the note was perfectly at the command of the makers for any legitimate-transaction with bona fide parties, during the period which the note had to run; they might pledge, redeem, and *repledge it, as
often at their necessities or convenience, in aid of which it was indorsed, might require. If the indorsers had intended to restrict the use of the note to a special purpose, they might have secured that end by a special indorsement; but, failing to do this, and giving to the note a general currency, and failing also to keep track of the note and to recall, by notice to Shaffer & Curtis, during the period for which it was first pledged, the general credit which, by their indorsement, they had imparted to it, it did not, by the first pledge, become functus officio, and might well be again pledged for the remainder of the period which the note had to run before maturity. Fall River Union Bank v. Willard, 5 Met. 216. See, also, Chickopee Bank v. Chapin, 8 Met. 40; and Mohawk Bank v. Corey & Livermore, 1 Hill, 513.
The renewal of the note of $1,000, for the security of which the $2,000 note was pledged- — -that renewal not extending the credit given beyond the period when the $2,000 note pledged would mature — can not, on any principle with which I am acquainted, be made available as a defense by the indorsers. To the contracts of pledge, they were not parties. They might, doubtless, have made themselves so by an indorsement special and restricted in its terms, or by notice to Shaffer & Curtis during the continuance of the first pledge; but neither of these things were done; they gave general currency and credit to the $2,000 note for the time which it had to run; to the contract embodied in that note, and that alone, they were parties; they were parties only in the character of indorsers, and they had only the rights of indorsers; which were, to be duly notified of the demand and non-payment of the note which they had indorsed; and this notice was given, and fixed their liability to the amount for which the note had been pledged. And, it seems to me, it can be claimed that they were entitled to notice of the nonpayment of the first note, for the security of which their note was pledged, or to be consulted in reference to its ^renewal, with *43 no more reason than it could be so claimed if they had. made a note to Callender, Waterson & Seward and lent it to them, without restriction, for their accommodation.

Judgment affirmed.

Swan, C. J., and Peck, J. concurred.
Scott, J., having formerly been of counsel, did not sit in this case.
Sutliff, J.
I find myself unable to concur in the opinion announced. The existence of all the errors alleged in this case I regard as clearly shown by the record before us.
The petition of Shaffer & Curtis seems to me quite defective. I do not regard the statement of facts set forth in the petition sufficient to constitute a cause of action against Erwin and Lane. In the first place, the petition does not, from the facts stated, show that the plaintiffs acquired any rights against the indorsers of the $2,000-note at the time and under the circumstances which it is alleged the makers delivered it to them. But even if the note, when delivered by the makers to Shaffer & Curtis, became thereby obligatory upon the indorsers, I still think the petition is defective. The substance of its averments is simply as follows : That the makers of the $2,000-note, indorsed by Erwin & Lane, made their note of $1,000 payable to the plaintiffs, Shaffer & Curtis, and gave them the $1,000 note, and therewith deposited with them the $2,000 note as security for its payment. They also aver that the makers of the $1,000 note-neglected to pay it at maturity; and that they also neglected to pay the $2,000 note at maturity, and that the said Erwin and Lane-were then notified of the wow-payment of the $2,000 note.
But the petition only charges the parties by reason of the nonpayment of the $1,000 note. It shows the only ^object, on the part of the payees, in requiring the $2,000 note to be deposited with the $1,000 note, was to obtain the suretyship of Erwin and Lane as indorsers. And that was the only purpose, as shown by the petition, for which Callender, "Waterson & Seward, the principals, agreed to, and did, in fact, deliver to Shaffer & Curtis the-$2,000 note with their $1,000 note. It appears, therefore, that Erwin and Lane sustained no other liability by reason of the delivery of the $2,000 note, as stated in the petition, than that of* indorser#, or sureties for the payment of the $1,000 note by the principals. Their liability to Shaffer & Curtis,_ upon the delivery of the $2,000-note as security for the $1,000 note, then, was conditional. They *44 -could only be made absolutely liable upon tbe happening of tbe following conditions, upon which their liability depended:
1. That the principals of the $1,000 note should fail to pay it at maturity.
2. That the holders should duly notify them of such non-pay-' ment by the makers.
The petition, it is true, states the non-payment of the $1,000 note by tbe makers; but it does not intimate that the plaintiffs pretend •to have notified the indorsers of such non-payment. It seems to me, therefore, that the indorsers of the $2,000 note, at most, only .sustained the same relation toward the makers and payees of the $1,000 note that they would have sustained if they had been accommodation indorsers of that note; and that they were equally entitled to due notice of the default of the makers.
Suppose the sureties, instead of consummating their contract by the qiurposes, terms, and delivery thereof being effected by their .agents, the 'principals of the $2,000 note, had gone with Callender, Waterson & Seward, and had themselves consented to the agreement made with Shaffer & Curtis, and had taken from Shaffer & Curtis their written memorandum of the agreement, or that the same'had been written upon each of the notes, the real rights and relations of the respective parties certainly would not *there•by have been varied. It would only have made the evidence thereof written instead of parol. But if the contract, as made by the makers of the $2,000 note with Shaffer & Curtis, were reduced to writing, as expressed by the statement in the petition, it must be admitted to only amount to this, that it was agreed that Callender, Waterson & Seward should pay $1,000 of the $2,000 note to Shaffer .& Curtis, and that the indorsers would remain liable, as indorsers, for their so paying, instead of for the full amount of the $2,000 note. In other words, while Shaffer & Curtis were unwilling to •discount the note to the makers for the full amount, they consented, and it was agreed they should, and they did, for half the amount. If the note had been for $1,000 instead of $2,000 on which the indorsers were holden, a delivery of that' note alone would have precisely expressed the undertaking, rights, and relations of each of the parties. It is evident, therefore, that the $1,000 note, exe■cuted by the makers of the $2,000 note, had no other effect than to reduce the amount for which the parties were to be holden on the 42,000 note, and in no other respect changed either the rights orre *45 lations of the parties. The plaintiffs in error, then, from the statements in the petition contained, continued to sustain the relation of indorsers, and were entitled to notice of the non-payment of theft,000 note.
But even if it were conceded that the petition is sufficient, I hold that the record still shows manifest error, for which the judgment of the district court ought to bo reversed.
The plaintiffs in error, for their first defense, denied owing the-said $1,000 to the plaintiffs, or any part thereof. Second, they set up as a defense that they indorsed said $2,000 note for the accommodation of the makers, to enable them to raise money by procuring the note to be discounted, and for no other purpose; and. that said-facts were well known to the plaintiffs. The third defense set *up in their answer by the plaintiffs in error, con- [56 sisted in an averment of the following state of facts: That the makers of the $2,000 note procured the indorsement thereof from plaintiffs in error, to enable them to discount the same and thereby raise money thereon, and that the same was well known to the plaintiffs; that the plaintiffs, instead of discounting the $2,000 note,, holding a note of $1,000, already due, against said makers, obtained from them another note of $1,000, payable sixty days from that date, in renewal of said note so due, and also obtained from the makers a deposit of the $2,000 note with them as collateral security for the payment of the $1,000 note so then given them, and on which they at the same time paid the interest for the sixty days, at the rate of 18 per cent.; all which, it is averred, was without the knowledge or consent of said indorsers. And they further-say that, when said $1,000 note fell due, on the 31st of December, 1853, instead of proceeding to collect it, or giving said indorsers notice of its non-payment, the plaintiffs entered into an agreement with the makers thereof, for the consideration of interest paid thereon by them in advance, at the like rate of 18 per cent., to-give them a further extension of twenty-seven days for the payment thereof, and accepted a note of said makers, of $1,000, payable at the bank of the plaintiff's accordingly, being the note mentioned in the petition. All which, they say, was done without tho-knowledge or consent of the said indorsers.
The first defense set forth in the answer, being in the nature of a general issue, made it incumbent on the plaintiffs to manifest their right of action by proof. The case was submitted to the- *46 ■court, and the court, as expressed in the record, “find the allegations of the plaintiffs’ petition to he true, and that the matters of -defense stated in the answer of the defendants, Jno. W. Erwin and Clark Lane, are not sustained by the evidence, and that there is due from the defendants,” etc., $1,120.43, and entered judgment ’ accordingly. The defendants, Erwin and Lane, ^thereupon filed their motion for a new trial, for the reason that the judgment was against the law and the evidence.
The court overruled the motion, and the defendants excepted The bill of exception presents, as is stated therein, all the evidence offered in the case; and the fact of the motion for a new trial, and that the same was overruled by the court, and the exceptions thereto of plaintiffs in error; and which was allowed by the court, and made part of the record in the case. The only evidence offered by Shaffer & Curtis consisted, as shown by the bill of exceptions, ■of the two promissory notes set forth in their petition, and the testimony of said Curtis. His testimony was as follows:
“ That on the 29th day of October, a. n. 1853, Thomas W. Water-son, one of the makers of said $2,000 note above referred to, brought said $2,000 note to the plaintiffs’ banking-house, in Hamilton, Ohio, and wished plaintiffs to discount it, and advance to said Callender, Waterson & Seward the money thereon, which request plaintiffs declined to do, on account of the length of time the note had to run. That about that time a note for $1,000 made by said Callender, Waterson & Seward, payable to and indorsed by Lewis L. Campbell, as accommodation indorser, and held by the plaintiffs, matured. That after the plaintiffs had declined to discount said $2,000 note, it was agreed between the plaintiff's and said Thomas W. Waterson, which agreement was executed, that said Callender, Waterson & Seward should give to said plaintiff, in renewal of said note on which said Campbell was indorser, a note for $1,000, drawn by Callender, Waterson & Seward, and payable to said plaintiffs, at their said bank, sixty days after date, and that said plaintiffs should hold said $2,000 note as collateral security for the payment of the same, and in further consideration of which, said Callender, Water-son & Seward agreed to pay, and did pay, to said plaintiffs, the interest in advance, at about twelve per cent. *per year, upon said $1,000 note, for said period of sixty days. That said sixty-days’ note for $1,000 expired on the 31st of December, 1853, and on the same day, the same was renewed by the said Callender, Water- *47 son & Seward giving to same plaintiffs the $1,000 note, a copy of which is made part of this bill of exceptions, payable twenty-seven •days after date, the said Callender, Waterson & Seward paying the interest on said $1,000 note in advance for said twenty-seven days, at the rate of twelve per cent, per annum, and leaving said $2,000 note as collateral security therefor. That said John W. Erwin and ■Clark Lane wore accommodation indorsers on said $2,000 note, which was known to the plaintiffs at the time it was first presented for discount, from the fact of its being presented for discount by the makers. That he (Curtis) had no recollection of ever conversing with either of the indorsers, from the' time the same was first presented for discount, until after its maturity, about said $2,000 note; nor was either of them present at any time when said $2,000 note was presented for discount, or deposited as collateral security. That Callender, Waterson & Seward totally failed about the 15th day of January, 1854, and made a general assignment for the benefit of their creditors. Said Curtis further stated, that on the 4th day of November, 1853, Linn & Young, and said Thomas W. Waterson, came to plaintiffs’ bank. Linn & Young had a note for $800, made by Callender, Waterson & Seward, dated November 4, 1853, payable to the order of Linn & Young, sixty days after date, at plaintiffs’ banking-house. Said note was then, at request of Linn & Young, discounted by plaintiffs, and, with consent of Thomas W. Waterson, said Linn & Young were to have a lien on said $2,000 note to secure the payment of said $800 note at maturity, both of which were then held and are still held by the plaintiffs-; and that Shaffer & Curtis had no knowledge of said $2,000 note having been previously offered or intended for discount elsewhere. The plaintiffs then rested.”
*Tkus it appears that the facts set forth in the third defense of Erwin and Lane, were fully sustained by the plaintiffs’ own testimony.
But it is said we are precluded from looking at the bill of exceptions to determine whether the judgment was in fact opposed to the evidence.
I do not so understand the law. In the case of Coleman v. Edwards & Jackson, 5 Ohio St. 51, it was held that when a motion for a new trial, on the ground that the court had misdirected the jury, had been continued to a subsequent term, and overruled, the party excepting to the overruling of the motion, had a right to have the *48 evidence and the ruling of the court at a former term set forth in> such bill of exceptions. The case of Hicks v. Person, 19 Ohio, 426, also sustained this bill of exceptions. These holdings, it is true, were upon bills of exceptions, taken under the statute of March 12, 1845, which provided as follows (2 Curwen, 1140): “In all cases pending in the court of common pleas, or in the Superior Court of Cincinnati, either party shall have the right to except to the opinion of the court, on a motion to a direct nonsuit, to arrest the testimony from the jury, and also in all cases of motion for anew trial, by reason of any supposed misdirection of the court to the jury, or by reason that the verdict may be supposed to be against law or evidence, so that such case may bo removed by writ of error,” etc.
.Under this provision of the statute, it is admitted, the cases referred to, of Coleman v. Edwards & Jackson, and Hicks v. Person, were correct expositions of the law. But the repeal of that statute, it seems to me, in nowise affects this case. The provision of the statute repealed, authorizes an exception to overruling a motion for a new trial, for that the judgment or decision is opposed to the evidence, is as fully expressed by the code as it was by the statute so repealed.
The language of the code is as follows, section 280 : “An exception is an objection taken to a decision of the court *upon a matter of law.” It is not doubted that either party has a right to except to any decision of the court. And it is provided by the code (sec. 294, last clause) : “ If true, it shall be the duty of a majority of the judges composing the court, to allow and sign it, whereupon it shall be filed with the pleadings, as part of the record.”
In relation to new trials, the code (sec. 297) provides as follows : “ The former verdict, report, or decision, shall be vacated, and a now trial granted, on the application of the party aggrieved, for any of the following causes, affecting materially the substantial' rights of such party.” Specifying eight causes, the sixth of which, in the language of the code, is as follows : “ That the verdict, report, or decision is not sustained by sufficient evidence, or is contrary to law.”
■ The case of House v. Elliott, 6 Ohio St. 497, was decided entirely upon the fact of the repeal of the statute of March 12, 1845.
The case of Gest v. Henner’s Adm’rs, 7 Ohio, 75, while the facts are somewhat different, professes only to follow the rule laid down-in House v. Elliott.
*49 And the court in the case of House 3?. Elliott, seem to have put that case entirely upon section 514 of the code, to which above refererence is made, as the provision governing the case. That section provides as follows : “A judgment rendered, or final order made, by any court, board, or tribunal mentioned in the three preceding sections, may be reversed, vacated, or modified by the Supreme Court, for errors appearing on the record,” etc.
Section 512 — one of the three preceding sections — defines a final order, as follows: “An order affecting a substantial right in an action, when such order in effect determines the action and prevents a judgment, and an order affecting a substantial right made in a special proceeding, or upon a summary application in an action after judgment, is a final order, which may be vacated, modified, or reversed, as provided in this title.”
^Showing clearly that the code commissioners intended to provide for the revising and reversing upon sufficient cause, by a superior court, of the final order of a court overruling a motion for a new trial. ' Indeed, this seems conceded by Judge Bowen in his opinion. After referring to section 514, he adds : “ But there is no-authority given to place upon the record for examination, the ruling of such court upon the facts of the case in disposing of a motion for a new trial.” The provision for taking a bill of exception, it is true, is not made by section 514, but it does not therefore follow that it is, as supposed, a casus omissus, in the code.
It is said, however, that section 280 of the code has application to such a case as this. That section provides as follows : “ Upon the trial of a question of fact by the court it shall not be necessary for the court to state its finding, except generally for the plaintiff or defendant, unless one of the parties request it, with the view of excepting to the decision of the court upon the questions of law involved in the trial, in which case the court shall state, in writing, the conclusion of fact found, separately from the conclusions of law.”
But that section certainly has nothing to do with a motion for a new trial. It relates only to a “trial by the court,” and to proceedings upon such trial previous to the decision by the court, and does not at all contemplate a motion for a new trial. Article 3 of the code, containing this section (280), relates only to the subject of “ trial by the court,” which is clearly indicated by the provisions of each section, as well as the title of the article. Article 2 of the code is entitled, “ Trials by Jury; ” article 3, “ Trial by the Court; ” *50 and article 4, “ Trial by Referees; ”. and each of the articles is dewoted to the subject indicated by its title, and prescribes the rules •of law applicable thereto. Next comes article 5 of the code, en-titlcd “ Exceptions,” which is devoted to that subject, and gives to •each party the right of excepting to a decision of the court upon a matter of law; *and making it the duty of the court to allow and sign such exceptions, so that the same may be made part of the record in the case. Article C, entitled “ New Trial,” treats upon that subject, and provides, among other things, that “ the former verdict, report, or decision shall be vacated and a new trial granted, on the application of the party aggrieved,” for any of the following causes, affecting materially the substantial rights of such party: “ 1. Irregularity in the proceedings of the court, jury referee, or abuse of discretion, by which the party was prevented from having atrial; 2. Misconduct of the jury or prevailing party; 3. Accident or surprise, which ordinary prudence could not have guarded against; 4. Excessive damages, appearing to have been given under the influence of passion or prejudice; 5. Error in the assessment in the amount of recovery, whether too large or too small, where the action is upon a contract, or for the injury or detention of property; 6. That the verdict, report, or decision is not sustained by sufficient evidence, or is contrary to law; 7. Newly-discovered evidence, material for the party applying, which he •could not, with reasonable diligence, have discovered and produced on the trial; 8. Error of law occurring at the trial, and excepted to by the party making the application.”
It is therefore the law of the case that upon the existence of „either of the causes specified for a new trial, the party aggrieved, by filing his written motion in due time, setting forth such cause, and ¡showing it to the court, on hearing of such motion, is entitled to have the former decision vacated by' the court. The proceedings •upon such motion for a new trial are just as distinctly provided for .and regulated by the provisions of the code, as are the proceedings ¡upon the original petition in the case. The law is imperative upon the court to vacate the former verdict, report, or decision, for either •of the causes named. And yet it is utterly impossible to give the benefit of an exception to the decision of the court upon this matter of Uaw (where, by the express provisions of the code govicrning the question, he is entitled to a new trial), unless such a bill *51 •«/ exceptions as presented in this case, be regarded as part of the record.”
It hardly needs anything more said to show that section 280 has no application to such a case as this — an exception to the court •overruling a motion for a new trial. But to still further illustrate the proposition, let us suppose the cause set forth, in a motion for a new trial, to be under cause 2, “misconduct of the jury” — by its verjr terms, section 280 could not have any application. Suppose, .again, the cause had been newly-discovered evidence, and the facts :skown to the court, on hearing of the motion to be that the defendant served as administrator, who had, with all the evidence and means in his knowledge, resisted, unsuccessfully, the recovery ■of a large amount upon an old promissory note against his intestate ; and that during the session of the court, and shortly after the verdict or judgment by the court, he had discovered a receipt, ■or other certain evidence, of the full payment of such note by his intestate; if upon proof made to the court, on hearing of his motion for a new trial of the genuineness of such receipt, or the certainty of the newly-discovered evidence of payment, the court ■should refuse a new trial, and deny the party the benefit of the express provision of the code, the party aggrieved must necessarily be remediless, unless such a bill of exceptions, .as presented in this •case, would enable a superior court to revise such error.
Indeed, on a motion for a new trial, as in this case, upon a given :state of facts, the cause stated being that a judgment is contrary to .law, and is not sustained by evidence (under the provision of cause '6, of section 297), if the decision of the court is not a “ decision upon :a matter of law,” I can not imagine one which could be so regarded. And if it is “ a decision of the court upon a matter of law,” then it is a decision which the code says may be excepted *to by the party, and that “time shall be given to reduce the exception to writing;” and the code further j>rovides thatf, “If true, it shall be the duty of the majority of the judges composing the court to .allow and sign it; whereupon it shall be filed with the pleadings •as part of the record.”
All the provisions of the code, respecting a bill of exceptions in ■the case of motions for a new trial, for the cause mentioned in the motion in this case, seem to me to have been duly observed and complied with by the party excepting, and by the court upon hearing and overruling the motion for a new trial. That bill of cxcep *52 tions, I think, upon being so filed with the pleadings, properly became “part of the record,” and ought to be so regarded by this court.
Regarding the record before us, then, as properly made up, in part, by the bill of exceptions, it appears to me to show, beyond any doubt, that the judgment rendered by the district court, in favor of Shaffer & Curtis, and against the plaintiffs in error, was-alike contrary to the evidence and the law of the case.
Curtis, one of the plaintiffs below, in his testimony set forth in-the bill of exceptions, does not deny the averment in the answer, that the plaintiffs in error indorsed the $2,000 note, as accommodation indorsers for the sole purpose of having it discounted. But he admit» that the makers brought the note to the bank of the plaintiffs and presented it for discount. And Waterson testifies to having made.known to Shaffer & Curtis, at the time, that the makers had tried, unsuccessfully to get the note discounted by a bank at Eaton. The defendants are, therefore, shown-by the evidence to have had reasonable notice that the $2,000 note was indorsed by plaintiffs in-error for the purpose of discount. They could not, therefore, acquire any rights in the same for the purposes sot up in the petition. Acquiring the notes so indorsed by Erwin and Lane, merely as a. collateral security for their overdue debt of $1,000, and *with. notice of the purposes for which indorsed, Shaffer & Curtis could not be regarded as bona fide holders thereof, so as to enforce the-same against the indorsers.
But, even if it were conceded that Shaffer & Curtis had no notice, either actual or constructive, of the fact of the note having been so indorsed for the sole purpose of discount, from all the evidence introduced, as shown by the bill of exceptions, they still showed no right to recover against the indorsers. The record' shows that the plaintiffs introduced no proof of presentation or notice of non-payment of the $1,000 note, for the payment of which it is averred that Erwin and Lane, as indorsers of the $2,000 note, became liable. But, on the contrary, the testimony of Curtis shows that, when the $1,000 note became due, instead of giving the indorsers notice of its non-payment, Shaffer & Curtis, without, the knowledge or consent of the indorsers, gave the makers an extension of time of twenty-seven days for its payment.
It is said that there are authorities going to show that the indorsers were not, under the circumstances, entitled to notice of the-non-payment of the $1,000 note of October 29th at matuiúty. And *53 reference is made, in the opinion of the majority of the court, to the cases of Fall River Union Bank v. Willard, 5 Met. 216; and President, Directors, etc., of the Chickopee Bank v. Chapin, 8 Met. 40; and the case of Mohawk Bank v. Corey, 1 Hill, 513, as authorities applicable to this case.
But I do not understand either of those cases as authority for’ dispensing with notice, or authorizing a judgment in favor of the defendants in error, and against the indorsers, in such a case as that presented by this record. It seems to me that the $2,000 note, ■and the $1,000 note of October 29th, being executed by delivery at the same time by the makers, and to the same party, and for the same purpose, ought to be regarded, substantially, as but one instrument of writing. Their object and legal effect was *only to bind the makers, as principals, to pay the $1,000 expressed by their note of’ that sum, within sixty days from date, and to bind the indorsers, in case of default by the makers, to pay the same debt, as indorsers, within ninety days. How, if this legal liability of the indorsers had been expressed by a special indorsement on the .•$1,000 note, instead of being expressed by the execution of the two notes, as it in fact was, 1 apprehend there could be no doubt that the indorsers would be discharged from their liability by neglect to notify them of tho non-payment of the $1,000 note. And I am unable to perceive any reason for their being notified of the nonpayment in the case supposed, that does not equally obtain in the present case. The record also shows that the makers of the $1,000 note had not failed at maturity of the note, when the indorsers, were entitled to notice of the non-payment; and that they had utterly failed before the holders of the note presented it for payment, ■or notified the indorsers of its non-payment. A legal presumption therefore arises from the record, that the indorsers were prejudiced •by the neglect of the holders of the $1,000 note, to give them notice of its non-payment.
Mr. Ohitty, in treating upon tho rights of persons more remotely connected with commercial pajjer than in this case, says: “ In •general, if the bill or note be given as a collateral security, and the party delivering it were no party to it, either by indorsing or ■transferring it by delivery, when payable to bearer, ... it lias been considered that he is not, within the custom of merchants, an indorser or party to it, so as to be absolutely entitled to strict regular notice, nor discharged from his liability by the neglect of *54 the holder to give him such notice, unless he can show, by express’ evidence or by inference, that he has actually sustained loss or damage by the omission. For, if a person deliver over a bill to-another without indorsing it, he does not subject himself to the ob-ligations of the law merchant, and can not be sued upon the bill;1 and, %s he does not subject himself to the obligation, he is not entitled, to the advantages.”
But the reason failing on which the exception depends, the exception fails. In this case, the indorsers, as we have seen, were equally liable to be sued for the amount of the $1,000 note, and were-by this action adjudged to pay that note, as though thej'- had indorsed the same. But Mr. Chitty proceeds to say : “ If the parties-who ought primarily to have paid the bill or note,'were solvent at the time the same became due, and for some time afterward, and. only subsequently became insolvent before notice, . . ■ . . an inference of actual damage from the want of notice to the party guaranteeing, or otherwise collaterally liable, will prevail, until rebutted by actual proof that, if notice had been given, payment, would not have been obtained.” . . . . “ Thus it was decided that a person who has guarantied the payment of money by a bill, was entitled (though no party to it) to insist on the neglect to make a proper presentment, or to give due notice of the dishonor of such bill, the drawer having become insolvent after it became due.”' . . . “ The doctrine that, unless a person is a party to a bill or note, he can not complain of the want of regular notice of the dishonor, must be understood with considerable qualification.” These-remarks of Mr. Chitty are quoted by Mr. Story, in his work on Bills of Exchange (see note, page 377, ch. 9), with apparent approbation; and in sec. 305 of the same work, Mr. Story says: “ In the next place, as to the persons to whom notice is to be given. Subject to the qualifications just stated, the notice must, of course, be-given by the holder or other parly to all the persons whose names, are on the bill, who are liable to him upon its dishonor, and to whom, he means to look for payment or reimbursement.” Even in cases of guaranty, it is said that11 the liability of a guarantor is conditional upon the proper and fruitless diligence in the holder;” and that, “ after a guaranty, any negligent confidence in the debtor is, by the
very nature of the contract, *at the i’isk of the holder.” Miller v. Birkey, 27 Penn. 317.
The same doctrine seems recognized by Mr. Byles, in his work on *55 Bills of Exchange, Promissory»Notes, etc. His language is (page 330) as follows: “ It is conceived that, in all cases where, in consequence of the dishonor of bills or notes, made or become payable to bearer, a remedy arises on the consideration, the transferer is entitled to notice of dishonor.”
And in the case of Turner v. Stone, 1 Dow. & L., the learned Judge Coleridge, after canvassing all the authorities upon the subject, in giving the opinion, says: “1 think the obligation on the holder is to give notice promptly to the party from whom he receives the note.”
I think the authorities, as well as sound reason, applicable to the case of notice, will be found to have made it incumbent upon the holders of the $1,000 note to have given due notice of its non-payment to the indorsers in all such cases as the one presented by this record.
The other proposition, that the giving an extension of time for the payment of the $1,000 note of October 29th discharged the indorsers, I think equally sustained by reason and authority. In the case of Ohio Life Insurance and Trust Co. v. McCague, 18 Ohio, 54, the court say: “And we are of opinion that, whatever bo the nature of the paper, and whatever the position of the surety therein, whether primarily or collaterally liable, if he be in fact a surety and known to the creditor as such, he can claim the benefit of this act” (the act for the relief of sureties and bail in certain cases, Chase’s Stat. 1160). Applying the same doctrine to this case, it must be admitted that, if any liability was imposed upon Erwin and Lane by the delivery of the $2,000 note with the $1,000 note, it was only that of suretyship for the payment of the $1,000. Erwin and Lane, therefore, being known and regarded by the holders of the $1,000 note as such sureties, were entitled *to the provisions of the code in favor of sureties. Again, in the case of Findlay’s Executors v. Bank of United States, 10 Ohio, 59, the court say: “ The case, therefore, is resolved by the principle, that it is unconseientious for a creditor to enforce his debts against a debtor, whose security is impaired or destroyed by his act.” And this court, in the application of the same doctrine, having uniformly hold that an extension of time given by the creditor to the principal, without the consent of the surety, was a release of the surety from further liability for the payment of the debt. Thus in the case of The Bank of Steubenville v. Carroll’s Adm’r, the court, in expressing their *56 opinion, use the following language* “ He who becomes surety for another, has a right to pay the debt when it becomes due, and collect it from his principal; he may substitute himself in place of the creditor, and subject any funds or securities provided for the payment of the debt, by the principal; or he may call upon the creditor to prosecute his suit without delay. The law does not permit the creditor to interfere with these rights. If he do invade them, the surety is held to be discharged.” The same doctrine is laid down in the following language by Mr. Justice Story, in his work on Promissory Notes, sec. 413 : “ If there be any valid agreement . . . . between the maker a.nd the holder, whereby the holder agrees to give credit to the maker of the note after it is due, or whereby the payment is postponed to a future day, and this agreement is made without the consent of the indorsers, they will be thereby absolved from all obligation to pay the same.” The case under consideration, it seems to me, is evidently a very proper one for the application of this reasonable doctrine, admitted to be uniformly applicable in favor of sureties.
Nor can I perceive the possibility of avoiding the conclusion that the indorsers were discharged by the extension of time given by the holders of the note to the makers, *by regarding the $2,000 note as taken up by the makers with the $1,000 note, and then redelivered to Shaffer & Curtis with the note sued upon, and so to be regarded as again held and made operative in like measure as when first delivered. If the new note is to be regarded as a satisfaction of the debt expressed by the note.given up, then I insist that the $2,000 note was absolutely extinguished, as was the $1,000 note thus surrendered by the holders, so far as the same ex! pressed any liability on the part of the indorsers. I admit that, in the hands of a stranger and a bona fide holder for a valuable consideration, it would have been subject to the general rule applicable to commercial paper not overdue. But I deny that the note could be again reissued by the makers to the same holders, who had so given it up, after it had fully subserved the purpose for which it had been first delivered. If it could, then it would follow that if Shaffer & Curtis had advanced, at its date, the sum of $2,000 instead of $1,000, or had taken it in renewal of a $2,000 note, the makers, by paying it at any time before due, could have procured the note to be again discounted at the bank first applied to at Eaton, with full knowledge, by the party receiving it, of all the *57 facts, and the indorsers again made liable for the amount. I maintain that when the $2,000 note had subserved the purposes for which first delivered, whether to secure the payment by the makers of $1,000 or $2,000, upon the satisfaction or extinguishment of the debt, the $2,000 note became as absolutely extinguished, between the parties, as it would have been if discounted in the usual manner and the debt fully paid by the makers.
I think it evident, then, from the facts of this case, that all the ■undertaking and liability of the indorsers to the holders was determined by the terms of the contract between the makers and holders at the time of the delivery of the $2,000 note. If, by that .delivery, Erwin and Lane were made liable at all to Shaffer & Curtis, it was as indorsers for the payment of the $1,000 note ■delivered therewith; *and they became, thereupon, entitled ■to all the rights of indorsers in that regard from the holders. Among these rights, and most important, was, first, the right, at maturity of the $1,000 note, so expressing the amount and condition of their liability, of having due notice from the holders in ■case of its non-payment; and, second, the right, at maturity of ■the $1,000 note, to enforce immediate payment from the makers. The code provides (sec. 500), that “ a surety may maintain an ■action against his principal, to compel him to discharge the debt or liability for which the surety is bound after the same has become due.” The indorsers, before the extension of time given the makers, had the right to compel them to immediately discharge the $1,000 debt, and the legal inference is that, had they been •duly notified, they would have done so upon the maturity of the ■paper. But the extension of time, so given by the holders, took away from the-indorsers this right, as the debt after the extension ceased to be due. I hold, therefore, that from ail the facts of the case, independent of the want of the necessary averments in the petition to charge them, the indorsers were, both in law and -equity, discharged from all liabilty to the holders upon the notes.
And for the reasons expressed, I am clearly of the opinion that the judgment of the district court should be reversed.